# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 10-0243-WS-C |
| | ) |
| ALICE MOBLEY, | ) |
| | ) |
| Defendant/Petitioner. | ) |

## ORDER

This matter comes before the Court on petitioner's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 (doc. 156). Also before the Court are the Magistrate Judge's 29-page Report and Recommendation (doc. 169), as well as petitioner's Objections to Magistrate Judge's Report and Recommendation (doc. 173), in which petitioner purports to raise 13 objections in the span of barely five pages. Briefing has concluded, and the § 2255 Petition is ripe for disposition.

### I.    Relevant Background.

Petitioner, Alice Mobley, was named as the sole defendant in a 99-count Second Superseding Indictment (the "Indictment") (doc. 70) relating to her income tax return business. Specifically, Mobley was charged with preparing and filing false and fraudulent tax returns on behalf of dozens of individuals (identified in the Indictment by their initials), some of whom were active participants in the fraud and others of whom were not. On July 22, 2011, Mobley entered a guilty plea to Count 1 (conspiracy to defraud the U.S. Treasury, in violation of 18 U.S.C. § 371), Count 42 (procuring a fraudulent tax return for taxpayer V.C. for the purpose of obtaining a tax refund in V.C.'s name, even though V.C. neither authorized nor retained Mobley to file a tax return on her behalf, in violation of 26 U.S.C. § 7206(2)), Count 80 (wire fraud in connection with the filing of V.C.'s tax return, in violation of 18 U.S.C. § 1343), and Count 98 (aggravated identity theft in connection with the filing of V.C.'s tax return, in violation of 18 U.S.C. § 1028A(a)(1)). (*See* doc. 102.)

At a hearing conducted on March 30, 2012, the undersigned sentenced Mobley to a term of imprisonment of 75 months, said term consisting of a low-end guideline sentence of 51

months on Counts 1, 42 and 80, said terms to run concurrently, plus a sentence of 24 months on Count 98, to be served consecutively. In calculating the guideline sentence, the Court found that Mobley's base offense level was 7, plus a 14-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(H) because the estimated tax loss to the Internal Revenue Service was between $400,000 and $1 million,[1] plus a two-level enhancement for 10 or more victims, plus a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) for Mobley's role as leader or organizer, minus three levels for acceptance of responsibility. (Doc. 150, at 5.) Thus, Mobley's adjusted offense level was 24, which combined with her criminal history category of I to yield a guideline range of 51 to 63 months. (*Id.*) The 24-month consecutive sentence for Count 98 was not discretionary, but was mandated by the plain language of 18 U.S.C. § 1028A. (*Id.*)

During the guilty plea negotiations and through the entry of her plea, Mobley was represented by retained counsel Tiffany McCord. Prior to the sentencing hearing, Attorney McCord was granted leave to withdraw from the representation based on her statements that "[t]he communication ha[d] broken down between" them and Mobley had retained new attorneys. (Doc. 140, 142.) At sentencing, Mobley was represented by retained counsel Michael Crosby. Additional retained counsel Susan James appeared for Mobley following sentencing, and continues to represent her today in these postconviction proceedings.

On May 25, 2012, less than two months after Mobley was sentenced, she filed a § 2255 Petition alleging ineffective assistance of counsel in connection with the guilty plea and sentencing proceedings. In particular, Mobley alleged that Attorney McCord had a *per se* or actual conflict that Mobley never waived; that Attorney McCord abandoned her before sentencing by failing to challenge the amount of loss enhancement under § 2B1.1(b)(1)(H); and that Attorney Crosby did not effectively represent her interests at the sentencing hearing, which

---

[1] With regard to amount of loss, defense counsel represented at the sentencing hearing as follows: "we do have an understanding regarding the monetary amount that's in effect. It's between – less than a million but over $400,001. That's by agreement." (Doc. 150, at 4.) On the strength of counsel's stipulation, the undersigned found, "There's a 14-level enhancement for amount of loss, the amount being between 400,000 and one million." (*Id.*) This range was actually favorable to Mobley, in terms of its depiction of the severity of her offenses. In that regard, the recommendation in the Presentence Investigation Report was that the amount of loss to the IRS resulting from Mobley's crimes was $958,727, which would obviously be near the apex of the agreed-upon range, whereas the stipulation left open where within the $400,000 to $1 million range the amount of loss was pegged.

Mobley claims resulted in both the monetary loss enhancement and the role enhancement being higher than they should have been.

Following briefing, Magistrate Judge Cassady entered a detailed Report and Recommendation (doc. 169) in which he recommended that the § 2255 Petition be denied in its entirety based on the following determinations: (i) assuming (without deciding) that Attorney McCord had an actual conflict of interest, Mobley failed to show that the conflict had an adverse effect upon counsel's performance, the plea agreement Mobley signed, or the sentence Mobley received; (ii) petitioner failed to show *Strickland* prejudice in connection with her guilty plea because, even now, she admits her guilt of the crimes to which she pleaded guilty; (iii) petitioner failed to show *Strickland* prejudice at sentencing with regard to the monetary loss and role enhancements; and (iv) no evidentiary hearing was necessary. Petitioner now articulates 13 overlapping objections to the Report and Recommendation for consideration by this Court.

## II.     Analysis.[2]

### A.     *Preliminary Objections Regarding* Per Se *Violation and Actual Conflict.*

Petitioner's first objection is that the Report and Recommendation cites Eleventh Circuit authority for the proposition that *per se* violations of the Sixth Amendment right to counsel are not cognizable. Mobley does not dispute the correctness of the challenged statement of law under binding precedent; rather, she simply notes that she wishes to preserve the issue for review by the Supreme Court. (Doc. 173, at 1.) This assertion reads like a clarification, not an objection. To the extent that it constitutes an objection to the Magistrate Judge's treatment of her *per se* violation argument, such objection is **overruled** as irreconcilable with the law of this Circuit.

Second, petitioner purports to object to findings on page 9 of the Report and Recommendation on the issue of whether Attorney McCord had an actual conflict. This

---

[2]     Applicable law requires "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). As to matters to which Mobley has not objected, the rule is that "failure to object to a magistrate judge's report and recommendation does not bar the party from attacking the magistrate judge's *legal conclusions* on appeal, but that the failure to object does limit the scope of appellate review for *factual findings* … upon grounds of plain error or manifest injustice." *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (citations omitted). The Court's review of the Report and Recommendation is informed by these principles.

objection is meritless because the Magistrate Judge resolved this issue in petitioner's favor. In that regard, the Report and Recommendation states that "the undersigned will … assume (without deciding) that Attorney McCord possessed an actual conflict." (Doc. 169, at 10.) This purported "actual conflict" was that McCord's father (E.B.) and stepmother (D.B.) were listed in the Indictment among the more than two dozen persons for whom Mobley was alleged to have prepared false or fraudulent tax returns.[3] The Report and Recommendation having resolved the "actual conflict" prong in Mobley's favor, she cannot now be heard to object to same.

> B. *"Adverse Effect" Objections.*
>
>> 1. *Legal Standard.*

The next eight objections all concern the Report and Recommendation's analysis of the "adverse effect" prong of the actual conflict analysis. Because many of these objections simply rephrase or repeat the same issues and arguments, in the interests of efficiency the Court will group them by stage of the proceeding and address them collectively. For purposes of this analysis, Mobley voices no quarrel with the legal standard utilized by the Magistrate Judge in analyzing her "actual conflict" claim. In summary, to establish ineffective assistance stemming from a conflict of interest, the defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Ferrell v. Hall*, 640 F.3d 1199, 1244 (11th Cir.

---

[3] Specifically, Count Eleven of the Indictment alleged that Mobley violated 26 U.S.C. § 7206(2) by assisting D.B. in preparing a 2009 tax return "which was false and fraudulent as to material matters, including that the said return represented that S.L. and K.L. were grandchildren of D.B. who lived with D.B. for more than half of 2009, for the purpose of falsely claiming the Earned Income Credit, when as MOBLEY then and there well knew and believed, S.L. and K.L. were not grandchildren of D.B. and did not live with D.B. for more than half of 2009." (Doc. 70, at 12.) Similarly, Count Twenty-Five charged Mobley with violating § 7206(2) by assisting E.B. in preparation of a 2009 tax return "which was false and fraudulent as to material matters, including that the said return represented that E.F. was a dependent grandchild of E.B., for the purpose of falsely claiming the dependent's deduction and falsely claiming the Child and Dependent Care Credit, when as MOBLEY then and there well knew and believed, E.F. was not a dependent grandchild of E.B." (*Id.* at 19-20.) At Counts 50 and 63, Mobley was charged with corresponding wire-fraud offenses with respect to both the D.B. tax return and the E.B. tax return. However, nothing in the Indictment alleged, charged or suggested that Mobley had committed aggravated identity theft with respect to D.B. or E.B., or that she had prepared their false/fraudulent tax returns without their authorization, knowledge, or payment. Thus, in contrast to the Indictment's charges relating to numerous other taxpayers' returns, Mobley was not charged with falsely or fraudulently holding herself out as a paid preparer for D.B. or E.B., or with acting without their knowledge and involvement in filing their tax returns.

2011) (citation omitted).[4] As noted *supra*, the Magistrate Judge assumed the existence of an actual conflict of interest, and therefore focused on the adverse effect prong. To prove adverse effect, a defendant must satisfy all of the following elements: (i) "he must point to some plausible alternative defense strategy or tactic [that] might have been pursued;" (ii) "he must demonstrate that the alternative strategy or tactic was reasonable under the facts," such that it "possessed sufficient substance to be a viable alternative;" and (iii) "he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Novaton*, 271 F.3d 968, 1011 (11th Cir. 2001) (citation omitted); *see also Reynolds v. Chapman*, 253 F.3d 1337, 1343 (11th Cir. 2001) (similar).

### 2.  *Adverse Effect Objections as to Guilty Plea and Plea Negotiations.*

In her objections, Mobley insists that there was an "adverse effect" with regard to her guilty plea because "Mobley, with unconflicted counsel, could have negotiated a better plea agreement" than Attorney McCord did on her behalf. (Doc. 173, at 3.) Defendant's theory is that Attorney McCord was desperate to plead this case out at any cost because she knew she faced the specter at trial of cross-examining her own father and stepmother. In effect, then, Mobley theorizes that her lawyer sold her up the river to dodge a conflict at trial. The trouble is that this theory is devoid of factual support. There is no indication that Attorney McCord harbored any reservations about taking the case to trial under these circumstances; to the contrary, Mobley's own evidence is that Attorney McCord "acted indifferent to the revelation that her father and stepmother were alleged victims" and subsequently "said this issue was not a problem." (Doc. 154, Exh. B at 2.) If Attorney McCord had any trepidation about proceeding to trial under these circumstances, she did not show it. And the plea negotiations were obviously protracted and hard-fought, given Mobley's admission that she "had rejected several plea offers" from the Government along the way. (*Id.* at 3.) This is not a case in which counsel jumped at the prosecution's first offer and browbeat her client to accept it.

---

[4]  *See also Lynd v. Terry*, 470 F.3d 1308, 1318 (11th Cir. 2006) (Sixth Amendment right to counsel untainted by conflicts of interest "is violated when the defendant's attorney has an actual conflict of interest that adversely affects the lawyer's performance"); *Hunter v. Secretary, Dep't of Corrections*, 395 F.3d 1196, 1200 (11th Cir. 2005) (citing as "unassailable legal premise" that "[a]n attorney's performance must be adversely affected by the conflict of interest before there is a constitutional violation").

Furthermore, there is no indication that any "better plea agreement" could have been obtained, irrespective of who was representing Mobley.[5] Petitioner offers no specifics as to what sort of deal she thinks conflict-free counsel might have procured. There is no evidence or reason to believe that a more favorable deal could have been available to her under any circumstances. More fundamentally, Mobley steadfastly admits to this day, "I do not seek to vacate my conviction because I am guilty of the crimes to which I pled guilty." (*Id.* at 1.) Even in her objections to the Report and Recommendation, petitioner reiterates that "Mobley has not challenged her guilty plea." (Doc. 173, at 2.) In light of these admissions, her apparent suggestion that Attorney McCord betrayed her by not negotiating a plea deal that would have excused her from pleading guilty to those crimes (of which she is admittedly guilty and which plea she does not now challenge) borders on the absurd. Simply put, petitioner has not shown that there was any viable alternative strategy Attorney McCord could have utilized with respect to plea negotiations, but that she failed to follow because of the purported conflict.[6] For all of

---

[5] In her objections, defendant suggests that she was induced to plead guilty "without obvious benefits." (Doc. 173, at 3.) This statement is demonstrably incorrect. The benefits to Mobley for executing this plea agreement were numerous and tangible, to-wit: (i) the Government agreed to dismiss 95 counts against her and to refrain from bringing any additional related charges against her; (ii) the Government agreed to cap the monetary loss for sentencing purposes at $1 million, while preserving Mobley's opportunity to object to that amount; (iii) the Government agreed to recommend a low-end sentence; and (iv) by executing the plea agreement and timely changing her plea, Mobley availed herself of a full three-level reduction for acceptance of responsibility, which had the effect of lowering the bottom end of her guideline range from 70 months to 51 months (a 27% reduction). To the extent that Mobley persists in arguing that her sentence "would have been the same if the [other 95] counts had not been dismissed" (doc. 164), she is wrong. The Court was not bound to adhere to the low-end recommendation, and would have been less likely to do so had Mobley pled guilty to 99 counts rather than just four. More importantly, recall that the Indictment included 12 counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). (*See* doc. 70, at Counts 88 – 99.) Eleven of those counts were dismissed pursuant to the plea agreement. Each of those counts carried the very real possibility of a two-year consecutive sentence pursuant to § 1028A(b)(2), although this Court would have had discretion under the statute to run them concurrently. Thus, the plea agreement removed the potential for Mobley to face an additional 22 years' worth of consecutive sentences on top of the low-end guideline sentence the Government had agreed to recommend. This is, indeed, an "obvious benefit" to the plea, even if Mobley does not appreciate it.

[6] In another objection, Mobley maintains that the plausible alternative strategy to her guilty plea was going to trial. On that point, Mobley reasons that "[i]f unconflicted counsel
(Continued)

these reasons, Mobley's objection that she suffered an "adverse effect" from Attorney McCord's conflict because conflict-free counsel could have negotiated a better plea agreement is **overruled**.

### 3. Adverse Effect Objections as to Substantial-Assistance Proffer.

Several of Mobley's other "adverse effect" objections relate to her dissatisfaction that she "did not receive cooperation credit as relates to McCord's family members." (Doc. 173, at 2.) Petitioner posits that Attorney McCord's conflict effectively precluded Mobley from parlaying valuable information concerning D.B. and E.B. into "an effort to seek a U.S.S.G. § 5K1.1 downward departure from the advisory sentencing guidelines." (Doc. 156-1, at 7 (footnote omitted).)[7] In Mobley's view, then, if only Attorney McCord had not had a conflict, Mobley

---

had been able to challenge the Government's case as relates to the alleged victims (McCord's parents), it is plausible that other challenges could have been made to the Government's case in total" and "it could have cast doubt in the jury's mind as to whether other alleged victims were actually participants." (Doc. 173, at 3.) With this argument, petitioner endeavors to have her cake and eat it too. One the one hand, she has repeatedly averred that she is not challenging or seeking to overturn her guilty plea. On the other hand, she seeks to establish a Sixth Amendment violation because her conflicted counsel persuaded her to plead guilty instead of going to trial. A § 2255 petitioner does not get to have it both ways. Besides, petitioner's argument does not establish the "reasonable alternative strategy" under the *Reynolds* line of cases. For Mobley to proceed to trial and attack D.B. and E.B. as not being "victims" would have been foolish because, as discussed *infra*, the Government never, ever suggested that they were victims. The Indictment identifies numerous individuals on whose behalf Mobley prepared false/fraudulent tax returns, some of whom were aware of and participated in the fraud and some of whom did not know she was preparing tax returns for them at all. By the clear wording of the Indictment, D.B. and E.B. fell within the first category, not the second. In other words, it would not have been a reasonable alternative strategy for Mobley to go to trial to try to persuade the jury that D.B. and E.B. were not really victims, and that the Government's entire case was therefore of dubious worth, for the simple and obvious reason that the Government never contended that D.B. and E.B. were victims. Whatever else can be said, such an irrational trial strategy was not a viable alternative to a guilty plea that resulted in dismissal of 95 of the 99 counts against Mobley, leaving only four charges to which she even now concedes guilt.

[7] In her Affidavit, Mobley explains that she informed Attorney McCord that E.B. "had knowledge of a false dependent being used and that he paid a girl for it," but that "[d]uring the three proffer sessions I had with the Government this information was never made known to prosecutors or investigators." (Doc. 154, Exh. B, at 2.) Mobley also protests that Attorney McCord "attended three proffer sessions with me and the issue of her father and stepmother as non-victims was never made known." (*Id.* at 4-5.)

could have traded inculpatory information about D.B. and E.B. to the Government in exchange for a § 5K1.1 reduction. As the Report and Recommendation correctly points out, however, the facts undermine this "adverse effect" theory. AUSA Bordenkircher stated at Mobley's sentencing hearing that the reason no § 5K1.1 motion had been filed was not that Mobley had failed to provide sufficient information, but that she had lied in her proffer. (Doc. 150, at 21 ("As far as a 5K, she did not qualify. She was not truthful. … I personally met with her, and what she said to me was not the truth.").) Mobley does not suggest that her untruths had anything to do with D.B. and E.B., or with her lawyer's familial ties to those individuals. Thus, she has only herself (and not her lawyer's conflict) to blame for not receiving a § 5K1.1 motion for substantial assistance.

The deeper, more basic problem with this line of objections is that there would have been nothing remotely revelatory, or even interesting, to the Government in the fact that "Mobley had information on her attorney's parents as participants and not victims." (Doc. 173, at 4.) Petitioner's repeated, emphatic statement that "McCord's father and her step-mother were alleged victims of Mobley's and included in her indictment" (doc. 164, at 1) is simply not correct. Although the Indictment listed more than two dozen taxpayers whose returns Mobley had fraudulently prepared, those individuals were not all portrayed as victims. Rather, as Mobley admitted, some of those taxpayers were victims (whose returns she prepared and filed without their authorization or approval, for the purpose of obtaining fraudulent refunds for herself), while others were participants (who worked with her to submit false tax returns and shared in the ill-gotten proceeds).[8] Petitioner's non-victim argument overlooks this dichotomy.

Under any reasonable reading of the Indictment, E.B. and D.B. were participants, not victims. Indeed, Count Eleven charged that Mobley had assisted D.B. in preparing a false tax return that claimed an Earned Income Credit based on two grandchildren living with D.B., even though Mobley knew the two persons were not D.B.'s grandchildren and did not live with D.B.

---

[8] In the Factual Resume accompanying her plea agreement, Mobley expressly agreed that "[s]ome of Mobley's clients were aware of the falsehoods on the tax returns filed in their name, others were not. In addition, Mobley filed returns in the names of individuals without their knowledge or permission and kept the refund associated with those returns. Mobley added false items to some client returns with the client's knowledge and consent and split the additional refunds associated with the false items with the clients." (Doc. 102, at 19.)

(Doc. 70, at 12.) Similarly, Count Twenty-Five charged that Mobley had assisted E.B. in preparing a false tax return that claimed a Child and Dependent Care Credit based on a dependent grandchild of E.B., even though Mobley knew the named person was not a dependent grandchild of E.B. (*Id.* at 19-20.) There were no allegations in these counts – or anywhere else – that Mobley took these actions without the knowledge or awareness of D.B. or E.B., or that she misappropriated their identities to file their tax returns.[9] In short, the Indictment never charged that D.B. and E.B. were victims of Mobley's scheme. On that basis, petitioner's theory that she could have obtained a § 5K1.1 motion from the Government if only Attorney McCord had allowed her to proffer information that D.B. and E.B. were "participants and not victims" is implausible to the extreme, and cannot constitute the requisite showing of adverse effect in a Sixth Amendment analysis.[10] The Court therefore **overrules** petitioner's objections to the

---

[9] By contrast, other counts recited specific facts revealing a taxpayer's victim status. In Count Thirty-Five, for example, Mobley was charged with preparing a tax return for a J.M. that "was false and fraudulent as to material matters, including that MOBLEY was a paid preparer for J.M.; that the said return represented that the … information on the return was the information furnished by the taxpayer, J.M., for the purpose of MOBLEY obtaining a tax refund from the United States in the name of J.M., when J.M. had not furnished MOBLEY with any information or authorized or paid MOBLEY to file his 2008 Federal tax return." (Doc. 70, at 25-26.) Thus, J.M. was a "victim" taxpayer, while D.B. and E.B. fell in the category of "participant" taxpayers.

[10] Three other points bear mention. First, as pleaded in the Indictment, numerous other taxpayers (among them L.M., M.B., Q.L., G.C.A., T.H., W.R., W.H., and S.B.) for whom Mobley prepared and filed fraudulent tax returns were participants, and not victims. Implicit in Mobley's argument is that any cooperation credit she might have received from the Government for § 5K1.1 purposes would have hinged solely on her implicating E.B. and D.B. But that's demonstrably false because Mobley could have implicated the other "participant" taxpayers without bringing her lawyer's conflict to the fore. Stated differently, Mobley has not shown how Attorney McCord's conflict would have prevented her from cooperating as to other participants or that E.B. and D.B. were so crucial to the Government that they would have been the linchpin to any § 5K1.1 consideration. Second, petitioner asks this Court to ignore the Government's representation at sentencing that what it cared about for § 5K1.1 purposes was whether Mobley "can come back and help us crack down on some of these other tax fraud places in Mississippi and Texas" (doc. 150, at 21), not whether she might assist the Government in prosecuting the low-level taxpayers who had participated in the tax fraud scheme she orchestrated. Third, Mobley's suggestion that "there is no way at this juncture to know" whether her telling the Government that E.B. and D.B. were not victims would have resulted in a § 5K1.1 motion is so far-fetched that it denies reality. (Doc. 173, at 4.) Here is what we know: (i) the Indictment did not charge that E.B. and D.B. were victims of Mobley's fraudulent activities; (ii) the charging (Continued)

Report and Recommendation insofar as she suggests that Attorney McCord's conflict adversely affected Mobley by hamstringing her cooperation efforts with the Government.

### 4. *Adverse Effect Objections as to Sentencing.*

Mobley's remaining "adverse effect" objections pertain to sentencing. For starters, petitioner maintains that, with conflict-free counsel, "she clearly could have challenged her sentencing and established flaws in the Government's case with regard to McCord's parents." (Doc. 173, at 2-3.) But the Government did not make any "case" at sentencing "with regard to McCord's parents." The counts relating to E.B. and D.B. were dismissed as part of the plea agreement. E.B. and D.B. were not counted as "victims" in any sentencing guideline or loss amount calculations. To the contrary, the loss amount in the Presentence Investigation Report ("PSR") was calculated based solely on "the estimated actual tax loss to the IRS" (doc. 122, ¶ 24), not the loss to any taxpayer victims. And the two-level enhancement for 10 or more victims did not necessitate that E.B. or D.B. be counted in order to reach that threshold, given the many other victims involved.[11]

---

language shows that the Government already knew E.B. and D.B. to be participants, not victims; (iii) there were many other "participant" taxpayers recited in the Indictment who were not related to Attorney McCord and about whom Mobley could have cooperated without touching upon her lawyer's conflict; (iv) the Government specified that Mobley had been denied a § 5K1.1 motion because her proffer had been untruthful; and (v) the Government spelled out exactly the kind of information it wanted from Mobley, which info had nothing to do with E.B. or D.B. On these facts, there is nothing "speculative" about the Magistrate Judge's conclusion that Mobley's quest for a § 5K1.1 reduction would not have been furthered had Attorney McCord allowed her to "rat out" E.B. and D.B. These facts negate any reasonable possibility that Attorney McCord's relationship to E.B. and D.B. (and petitioner's resulting failure to offer cooperation about them) made even a thimbleful of difference to the Government's determination that no § 5K1.1 motion was appropriate.

[11] Recall that the Indictment identified some 27 taxpayers for whom Mobley prepared fraudulent tax returns, with or without their knowledge. (Doc. 154, Exh. A.) Again, the relevant threshold for the two-level enhancement was whether the number of victims was more or less than 10. *See* U.S.S.G. § 2B1.1(b)(2)(A) ("If the offense … involved 10 or more victims … increase by **2** levels."). To argue that number of victims was less then 10, such that the § 2B1.1(b)(2)(A) enhancement was inapplicable, it would not have been necessary for Attorney McCord to say anything about D.B. or E.B. The Court therefore rejects as logically and factually unfounded petitioner's objection that "with unconflicted counsel she could have challenged the number of victims that were used for sentencing enhancement purposes in this
(Continued)

Next, Mobley contends that she was adversely affected at sentencing by Attorney McCord's conflict because, absent such a conflict, she could have cooperated with the Government as to E.B. and D.B. and requested a sentencing variance even if no § 5K1.1 motion were filed. This is not a plausible alternative strategy. Again, the Government informed the Court at sentencing that Mobley's cooperation was inadequate because she had not been truthful. Given that fact, this Court would not have looked favorably on a defense request for a variance, even if Mobley had informed the Government about E.B. and D.B. not being victims (which, again, the Government almost certainly knew anyway). On this record, it would have been folly for petitioner's counsel to request a variance for cooperation given Mobley's untruthful proffer, even if she also had been candid and forthright in implicating E.B. and D.B. with criminal activity. This scenario is not an "adverse effect" that might justify § 2255 relief on an actual conflict theory.

Petitioner also objects to the Magistrate Judge's determination that "for the purpose of calculating the loss amount that ultimately determined the advisory guideline range for sentencing, it made no difference whether E.B. and D.B. actively participated in Mobley's scheme or were unaware of the falsehoods Mob[le]y added to their returns." (Doc. 169, at 19.) According to petitioner, this conclusion is incorrect "for the obvious reason that … it certainly could have formed the basis for a variance argument at sentencing." (Doc. 173, at 4-5.) The Court disagrees. To the extent that petitioner is arguing that she might have received a variance had she been allowed to provide the Government with inculpatory information concerning E.B. and D.B., that contention fails for the reasons stated *supra*. To the extent that petitioner's point is that she might have received a variance had she pointed out that E.B. and D.B. did not suffer a loss at all, that argument fails because the very large loss to the IRS (for which Mobley was being sentenced) remained the same either way. Simply put, the Court perceives no viable variance argument that petitioner might have constructed with conflict-free counsel had she notified the Government that E.B. and D.B. were not victims. Once again, there was no adverse effect to Mobley's sentence stemming from Attorney McCord's assumed actual conflict, and

---

case." (Doc. 173, at 2.) The conflict had nothing to do with whether or not counsel challenged the number-of-victims enhancement; therefore, this argument does not show adverse effect.

petitioner's objections to the contrary are **overruled**. There are simply no facts and no reasons to believe that Mobley's disclosure of E.B. and D.B.'s non-victim status would have made any difference to her sentence, or even armed counsel with plausible new arguments to raise on her behalf at sentencing.

### C. *Ineffective Assistance Objections.*

In her final three objections to the Report and Recommendation, petitioner takes issue with the ineffective-assistance analysis in which the Magistrate Judge concluded that Mobley had not satisfied the *Strickland v. Washington* prejudice requirement. (Doc. 169, at 20-27.) Petitioner's first objection is an unilluminating blanket statement that "based on the totality of the issues in this case, including a conflict issue with attorney McCord, she received ineffective assistance." (Doc. 173, at 5.) This conclusory argument identifies no flaw or error in the Magistrate Judge's well-reasoned prejudice analysis, and is therefore unavailing.

Petitioner's second ineffective-assistance objection is that Mobley should not be held responsible for her counsel's failure to file objections to the PSR. (Doc. 173, at 5.) This argument misreads the Report and Recommendation. Nowhere did the Magistrate Judge find (or even imply) that Mobley's ineffective-assistance claims are somehow barred or impaired by her counsel's failure to object to the PSR. Instead, the Magistrate Judge looked at the facts and arguments presented in Mobley's § 2255 Petition, and concluded that petitioner had not met her burden of showing *Strickland* prejudice as to the role enhancement (because there is no evidence that two former employees' testimony would have made any difference to that enhancement) or the loss amount (because there is no evidence that any CPA testimony could have reduced the loss amount to the IRS from the $958,727 calculated in the PSR to a level below the $400,000 cutoff for the next lowest enhancement under U.S.S.G. § 2B1.1(b)(1)). Mobley's non-filing of objections to the PSR thus had nothing to do with the Magistrate Judge's analysis or conclusions, and was not held against her for § 2255 purposes.

Finally, petitioner takes on the Report and Recommendation's analysis of the role enhancement. Again, this Court applied a four-level enhancement to Mobley's guideline calculations at sentencing pursuant to U.S.S.G. § 3B1.1(a), based on her role as leader or organizer. According to petitioner, "the testimony of two former employees was necessary to refute the role enhancement. If they had been called at sentencing this could have resulted in a lesser role enhancement." (Doc. 173, at 5.) Here's the problem: Petitioner has never informed

the Court what these "two former employees" would have said had they testified. Instead, petitioner trades in the vaguest of generalities. In her initial memorandum of law, Mobley referenced "evidence in discovery which conflicted regarding Mobley's alleged role in the offense as an organizer and leader" (doc. 156-1, at 17), but she never shared that information with the Court. In an affidavit, Mobley makes an unhelpful, conclusory reference to "the conflicting statements of Feitzell Locke Wiggins and Latana Locke, previous employees, regarding challenging the suggested leadership role." (Doc. 154, Exh. B at 4.) But she never indicates what those "conflicting statements" were or how they might have helped attack the role enhancement at sentencing. Even now, petitioner has provided the Court with no inkling what testimony these two individuals might have offered at sentencing to rebut the role enhancement. This lack of proof constitutes a total failure by petitioner to meet her burden of showing prejudice from the purportedly deficient performance of her counsel in not calling those witnesses. *See, e.g., Evans v. Secretary, Florida Dep't of Corrections*, 699 F.3d 1249, 1270 (11th Cir. 2012) (under *Strickland*, "a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors," and that "[t]he likelihood of a different result must be substantial, not just conceivable") (citations omitted). The Report and Recommendation did not err in so concluding, and petitioner's objection is **overruled**.

**III.  Conclusion.**

For all of the foregoing reasons, it is hereby **ordered** as follows:

1. The Court **overrules** all of petitioner's Objections to Magistrate Judge's Report and Recommendation (doc. 173);

2. After careful review of the § 2255 motion, including a *de novo* determination of all legal issues and a *de novo* determination of factual issues to which objection has been made, the Court **adopts** the Report and Recommendation (doc. 169) of the Magistrate Judge dated June 19, 2013;

3. Petitioner's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 (doc. 156) is **denied**, and this action is **dismissed**; and

4. For the reasons stated in the Report and Recommendation, and because the Court finds that none of petitioner's objections are of debatable merit or deserve

encouragement to proceed further, petitioner's request for a Certificate of Appealability is **denied** pursuant to Rule 11(a) of the Rules Governing § 2255 Cases, and petitioner is not entitled to appeal *in forma pauperis*.

DONE and ORDERED this 15th day of August, 2013.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE